UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-60332-VALLE

<u>CONSENT CASE</u>

DEMETRIA YOLANDA MOYE,
    Plaintiff,

v.

ANDREW M. SAUL,[1]
*Commissioner of the*
*Social Security Administration*,

    Defendant.
_____/

## <u>ORDER ON MOTIONS FOR SUMMARY JUDGMENT</u>

THIS MATTER is before the Court on Plaintiff Demetria Yolanda Moye's ("Plaintiff")

Motion for Summary Judgment and Defendant Andrew M. Saul, Commissioner of Social Security

Administration's ("Defendant") Motion for Summary Judgment (ECF Nos. 20, 22, respectively)

(together "the Motions").  Pursuant to the parties' consent, this case is before the undersigned for

all proceedings, including trial and entry of final judgment.  (ECF Nos. 15, 16); *see also* 28 U.S.C.

§ 636(c).

Accordingly, after due consideration of the record, the Motions, Defendant's Response

(ECF No. 23), Plaintiff's Reply (ECF No. 25), and being otherwise fully advised on the matter,

Plaintiff's Motion is **DENIED**, Defendant's Motion is **GRANTED**, and the Administrative Law

Judge's Decision ("ALJ's Decision") is **AFFIRMED** for the reasons set forth below.

_____

[1] After the commencement of this case, Andrew M. Saul became the Commissioner of the Social
Security Administration.  Accordingly, pursuant to Federal Rule of Civil Procedure 25(d), the
Clerk is DIRECTED to substitute Andrew M. Saul, Commissioner of Social Security, as
Defendant in this case. *See* (ECF No. 22 at 1 n. 1).

# I.    PROCEDURAL HISTORY

This suit initially involved applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. § 401 *et seq.* (the "Act"). Plaintiff alleged a disability onset date of July 2, 2015. (R. 204).[2] Plaintiff's claims were denied initially and again upon reconsideration. (R. 88-111, 112-37). Thereafter, Plaintiff requested a hearing, which was held on January 3, 2018 before ALJ Rosanna D'Alessio. (R. 67-87, 159). Plaintiff, who was represented by counsel, and a Vocational Expert both testified at the hearing. On April 20, 2018, the ALJ issued a decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act.[3] (R. 11-26).

Subsequently, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-7); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's Decision. (ECF No. 1); *see also* 42 U.S.C. § 405(g). Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

# II.    STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination. *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864

---

[2] All references are to the record of the administrative proceeding, which was filed as part of the Defendant's Answer. *See* (ECF Nos. 13 and 14).

[3] At the hearing, Plaintiff denied certain wages listed on her 2010 earnings statement. (R. 74, 75). The elimination of those wages changed Plaintiff's date last insured for DIB purposes to June 30, 2015, predating her alleged onset date of July 2, 2015. *See* (R. 12); *see also* (R. 75-76). Accordingly, Plaintiff's DIB application was precluded. (R. 14, 76); *see also* (ECF No. 20 at 2). Plaintiff does not challenge this determination.

(11th Cir. 2011) (citations omitted); *see also* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance") (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth,* 703 F.2d at 1239 (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts "do not act as automatons." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018). Rather, courts "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor*, 786 F.2d at 1053 (citing *Bloodsworth*, 703 F.2d at 1239); *Brightmon,* 743 F. App'x at 351 (citation omitted).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423 (standard for DIB), 1382 (standard for SSI). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical,

physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1)     Is the person presently unemployed?
(2)     Is the person's impairment severe?
(3)     Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
(4)     Is the person unable to perform his or her former occupation?
(5)     Is the person unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability.  *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  A negative answer to any question, other than Step 3, leads to a determination of "not disabled."  *Id.*

Importantly, the burden of proof rests on the claimant through Step 4.  *Phillips*, 357 F.3d at 1241 n.10.  At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The regulations define RFC as that which an individual is still able to do despite the limitations caused by her impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The RFC assessment is used to determine whether the claimant can return to her past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled."  *Phillips*, 357 F.3d at 1238 (citations omitted).  If a claimant cannot return to her past relevant work, then the ALJ proceeds to Step 5.  *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work."  20 C.F.R.

§§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Phillips*, 357 F.3d at 1239 (citation omitted). The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform. *Phillips*, 357 F.3d at 1239. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. *Id.* Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled. *Id.* The ALJ may determine whether the claimant can adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2); or (2) using a Vocational Expert, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy. *Id.* at 1239-40.

## III.     THE ADMINISTRATIVE RECORD

### A.     Claimant's Background and Hearing Testimony

Plaintiff, born in July 1969, was 48 years old at the time of the administrative hearing. (R. 67, 201). She has a twelfth-grade education and lives with her daughter, niece, and nephews. (R. 71-72). Plaintiff worked as a telemarketer, cashier, and cook. (R. 73-75, 85).

Plaintiff testified about her impairments. Plaintiff testified that in December 2014, she was hit by a car and injured her left ankle. (R. 76). As a result, Plaintiff's left foot swells, but she has not received any treatment for this. (R. 76-77). Plaintiff also suffers from multiple sclerosis ("MS"), which has affected her ability to speak and walk. (R. 77-78). Plaintiff uses a cane, which was not prescribed by a doctor, to help with her MS. (R. 77, 84). Plaintiff uses the cane every day and can walk for about five minutes before having to stop due to left leg pain. (R. 78-79). Plaintiff testified that she can stand for approximately five minutes, sit for 30-45 minutes, and lift five to ten pounds. (R. 79-80). Plaintiff's MS affects her ability to dress herself, bathe, and grasp objects.

(R. 78). Plaintiff's MS is treated with an injection, but she could not recall the name of the medication. (R. 86).

Plaintiff testified that she has chest pain every day, and she must sit down when she is in pain. (R. 81-82). Other than her chest pain, Plaintiff does not have any other pain in her body. (R. 82). Furthermore, Plaintiff's diabetes is asymptomatic and under control. (R. 81).

Plaintiff's daily activities include eating, taking her medicines, and watching television. (R. 80). Plaintiff sleeps about five hours in a typical night. (R. 80-81). Plaintiff cannot sweep or mop the floor for more than five minutes because she tires quickly. (R. 81). Plaintiff testified that she has trouble with her concentration and memory, and has no hobbies or social activities. (R. 82-83).

During the hearing, the ALJ noted Plaintiff's counsel's request that the ALJ subpoena records from Broward Health. (R. 83). The ALJ indicated that she would try to obtain these records without a subpoena. (R. 83-84). Plaintiff's counsel advised the ALJ that the Broward Health records dealt with a two or three-night inpatient stay for breathing trouble. (R. 83, 86).

### B. Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing and categorized Plaintiff's past relevant work as a cashier II (an unskilled, light job with an SVP of 2) and cashier-checker (a semi-skilled, light job with an SVP of 3). (R. 85).

The ALJ did not pose any hypothetical questions to the VE, as Plaintiff could perform a full range of sedentary work. In response to a hypothetical from Plaintiff's counsel, the VE testified that an individual who missed work four or more days a month could not perform Plaintiff's past relevant work. (R. 85). The VE added that if the individual needed a 30-minute

break every three to four hours in addition to normal breaks, that individual would not be able to work.  (R. 86).

### C.    Medical Records

Between December 2014 and March 2018, Plaintiff saw various doctors for treatment of multiple sclerosis, hypertension, diabetes mellitus, and obesity.  Among these, Plaintiff was treated by doctors at Path Medical Center, Pompano Adult Primary Care Center (later known as The Annie L. Weaver Health Center), Northwest Medical Center, and JFK Medical Center.  These records are discussed below as they pertain to Plaintiff's arguments.

## IV.    THE ALJ'S DECISION

After reviewing the evidence and conducting the requisite five-step analysis, the ALJ concluded that Plaintiff "has not been under a disability within the meaning of the Social Security Act from July 2, 2015 through the date of this decision."  (R. 12, 21).

At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since July 2, 2015, the alleged onset.  (R. 14).

At Step 2, the ALJ found that Plaintiff had the following severe impairments:  multiple sclerosis; hypertension; hyperlipidemia; diabetes mellitus; obesity; and cardiomyopathy.  *Id.*

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  *Id.*

Next, the ALJ determined that Plaintiff had the RFC to perform the full range of sedentary work.[4]  (R. 15).

_____

[4] Sedentary work includes the ability to: (i) lift and/or carry up to 10 pounds occasionally and 5 pounds frequently; (ii) stand/walk for 2 hours in an 8-hour workday; and (iii) sit for 6 hours in an 8-hour workday.  *See* 20 C.F.R. §§ 404.1567(a), 416.967(a); *see also* Soc. Sec. Ruling 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983).

At Step 4, after considering the VE's testimony and Plaintiff's RFC, the ALJ determined that Plaintiff was unable to perform her past relevant work as a cashier. (R. 20). While Plaintiff's RFC limited Plaintiff to a full range of sedentary work, Plaintiff's cashier job required performance at the light exertional level. (R. 20). Accordingly, the ALJ proceeded to Step 5 of the evaluation process. (R. 20).

At Step 5, relying on the Medical-Vocational Guidelines, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform despite her limitations. (R. 21). Accordingly, the ALJ concluded that Plaintiff was not disabled.

## V.  DISCUSSION

Plaintiff raises five arguments on appeal. First, Plaintiff argues that the ALJ erred in assigning "no weight" to the opinion of Dr. Bashir Shaikh, whom Plaintiff labels a treating source. (ECF No. 20 at 10-13). Second, Plaintiff argues that the ALJ failed to "fully and fairly" develop the administrative record. *Id.* at 13-15. Third, Plaintiff argues that the ALJ did not properly consider whether Plaintiff's heart condition met or equaled Listing 4.04. *Id.* at 15-16. Next, Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility. *Id.* at 16-17. Lastly, Plaintiff challenges the constitutionality of the ALJ's appointment. *Id.* at 17-18.

For the reasons discussed below, the undersigned finds that the ALJ applied the proper legal standards and that her Decision is supported by substantial evidence. The undersigned also finds that Plaintiff's Appointments Clause challenge fails as untimely. Because the Appointments Clause challenge is a legal and procedural argument, the undersigned will address it first.

**A. Plaintiff's Appointments Clause Challenge is Untimely**

Relying on the Supreme Court case *Lucia v. SEC*, 138 S. Ct. 2044 (2018), Plaintiff asserts that Social Security Administration ("SSA") ALJs are unconstitutionally appointed under the Appointments Clause, and the Court must therefore remand her case to be heard by a different and constitutionally appointed ALJ. *See* (ECF Nos. 20 at 17, 25 at 10). Pursuant to the Appointments Clause of the United States Constitution, "Officers of the United States" may be appointed only by the President, "Courts of Law," or "Heads of Departments." U.S. CONST. Art. II., § 2, cl. 2.

In *Lucia*, the Supreme Court addressed an Appointments Clause challenge to an ALJ appointed by the Securities and Exchange Commission (an "SEC ALJ"). *Lucia*, 138 S. Ct. at 2049-50. Lucia faced charges of misleading investors in connection with the sale of retirement products. *Id.* at 2050. During the hearing that followed, the SEC ALJ found that Lucia's products were, in fact, misleading, required Lucia to pay substantial fines, and permanently banned Lucia from working in the investment industry. *Id.* Lucia appealed the ALJ's unfavorable decision to the SEC, arguing that the ALJ had not been properly appointed under the Appointments Clause. *Id.* After losing that appeal, Lucia sued in federal court, challenging the penalties imposed by the SEC ALJ and reiterating his earlier Appointments Clause argument. *Id.* The D.C. Circuit Court of Appeals denied the challenge. Thereafter, the Supreme Court heard the case, reversed the decision, and remanded the case so that Lucia's agency appeal could be heard by a different ALJ who had been properly appointed under the Appointments Clause. *Id.* at 2055.

The Supreme Court in *Lucia* did not specifically address the constitutionality of the appointment of ALJs working for other federal agencies, including the SSA. Nonetheless, following *Lucia*, Social Security claimants have challenged the status of SSA ALJs under the Appointments Clause. *See, e.g., Gagliardi v. Social Security Administration*, No. 0:18-CV-62106,

at ECF No. 35 (S.D. Fla. Jan. 17, 2020), *report and recommendation adopted*, No. 0:18-CV-62106, at ECF No. 38 (S.D. Fla. Feb. 28, 2020) (appeal filed Feb. 28, 2020). Similarly, Plaintiff here argues that *Lucia* applies to SSA ALJs, requiring this Court to vacate the current ALJ's Decision and remand the case to a different ALJ appointed in accordance with the Appointments Clause. *See* (ECF Nos. 20 at 17, 25 at 10).

In response, the Commissioner argues that Plaintiff's argument is untimely in that she failed to raise her Appointments Clause challenge during the administrative process, thereby forfeiting this argument. *See* (ECF No. 22 at 17-24). Plaintiff asserts, however, that "this is the first opportunity Plaintiff had to challenge the appointment of the ALJ" because *Lucia* was decided after Plaintiff had sought review by the Appeals Council. (ECF No. 20 at 18). According to Plaintiff, she "presented her Appointments Clause challenge at the first opportunity, which was in her opening brief [to the undersigned] and after SSA acknowledged the faulty appointment of its ALJs and properly appointed them."[5] (ECF No. 25 at 10). The undersigned finds this argument unpersuasive.

Long before *Lucia,* well-settled case law required that Appointments Clause challenges be made timely. Indeed, in *Ryder v. United States,* the Supreme Court noted that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates [her] case is entitled to a decision on the merits . . . . Any other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments." 515 U.S. 177, 182-83 (1995). Moreover, "regularly permitting unsuccessful claimants to raise

---

[5] In July 16, 2018, the SSA issued a Ruling in which the Acting Commissioner ratified the appointment of all SSA ALJs and approved those appointments as her own. That ratification, however, does not apply retroactively. SSR 19-1p; *see also* Social Security Ruling 19-1p; Titles II and XVI: Effect of the Decision in *Lucia v. Securities and Exchange Commission (SEC*) on Cases Pending at the Appeals Council, 84 Fed. Reg. 9582-02, 2019 WL 1203026 (Mar. 15, 2019).

[Appointments Clause] challenges for the first time on judicial review would encourage the practice of 'sandbagging:' suggesting or permitting, for strategic reasons, that the [adjudicative entity] pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error." *Muhammad v. Berryhill*, 381 F. Supp. 3d 462, 469-70 (E.D. Pa. 2019) (quoting *Freytag v. Comm'r,* 501 U.S. 868, 895 (1991)); *see also Gutierrez v. Berryhill*, No. CV-17-129-GF-BMM, 2019 WL 2240602, at *4 (D. Mont. May 24, 2019) (concluding that failure to raise an Appointments Clause objection during claimant's administrative proceedings precludes claimant from raising the issue on judicial review).

Against this backdrop, and having considered the facts of this case and the authorities cited in the competing Motions, *see* (ECF Nos. 22 at 17-24 and 25 at 3-11), the undersigned finds that Plaintiff has forfeited her Appointments Clause challenge by not having argued the issue during the administrative proceedings.[6] Federal courts in Florida routinely have interpreted *Lucia* to mean that, in the context of social security proceedings, an Appointments Clause challenge must be raised before the ALJ's Decision becomes final at the administrative level.[7] *See, e.g.*, *Perez v. Berryhill*, No. 18-CV-20760, 2019 WL 1405642, at *4 (S.D. Fla. Mar. 28, 2019) (rejecting as untimely claimant's Appointments Clause argument raised for the first time before the district court) (relying on *Lucia*, 138 S. Ct. at 2055 and *Ryder*, 515 U.S. at 182-83); *Parker v. Berryhill*, No. 18-CIV-14349, 2019 WL 3097511, at *10-11 (S.D. Fla. July 15, 2019) (rejecting same argument, explaining that "[a]lthough the Eleventh Circuit has yet to decide this issue, the

---

[6] In reaching this conclusion, the undersigned need not determine whether SSA ALJs are "Officers of the United States" subject to the Appointments Clause.

[7] The undersigned notes, however, that two of the decisions from other courts in this district are currently pending appeal before the Eleventh Circuit. *See Perez v. Comm'r of Soc. Sec.*, No. 19-11660 (appeal filed Apr. 29, 2019) and *Lopez v. Acting Comm'r of the Soc. Sec. Admin.*, No. 19-11747 (appeal filed May 3, 2019).

courts within this circuit have held that an Appointments Clause challenge, in the context of social security disability proceedings, is nonjurisdictional and must be raised at the administrative level," and noting that *Sims*[8] "does not stand for Plaintiff's argument that an SSA claimant may raise issues for the first time in federal court"); *Lopez v. Berryhill*, No. 18-20626-CV-TORRES, 2019 WL 1429632, at *5-7 (S.D. Fla. Mar. 29, 2019) (explaining that if plaintiff "truly wished to raise an Appointments Clause challenge, *Lucia* and *Ryder* require[d] her to have done so either during the proceedings before [the] ALJ . . . or to the Appeals' Council after the ALJ issued his decision"). *See also Jones v. Berryhill*, No. 4:18-CV-503-CAS, 2019 WL 2583157, at *7-8 (N.D. Fla. June 21, 2019) (finding that claimant forfeited her Appointments Clause challenge by failing to raise it at any point during the administrative process, and commenting that "post-*Sims* cases have found that although *Sims* held that a Plaintiff need not exhaust an issue before the Appeals Council, the Court 'specifically left open the question of whether an issue is waived if it is not raised in the administrative hearing'"); *Valle-Roman v. Comm'r of Soc. Sec.*, No. 6:18-CV-1158-ORL-TBS, 2019 WL 1281171, at *2 (M.D. Fla. Mar. 20, 2019) (holding that plaintiff's failure to raise Appointments Clause issue at the administrative level is "fatal" to her claim because "[a]ny challenge to the constitutional validity of the ALJ's appointment that was not first raised at the administrative level is rejected as untimely"). "These cases agree with the 'vast majority of courts that have considered this issue' and have concluded the Appointments clause issue is forfeited if not raised in the administrative proceedings." *Jones*, 2019 WL 2583157, at *7 (collecting cases). The undersigned finds these cases persuasive.[9]

---

[8] *Sims v. Apfel*, 508 U.S. 103 (2000)

[9] In addition, as the Commissioner points out, "in the wake of *Lucia*, 42 out of 44 district courts that have decided [this] issue have rejected attacks on the validity of an SSA ALJ's appointment where the claimant failed to make the constitutional challenge at the administrative level (although

Alternatively, Plaintiff asks the Court to "excuse" her forfeiture of this argument. (ECF No. 25 at 10). In the absence of "rare" and "exceptional" circumstances, the undersigned declines to undertake this discretionary review. *Cf. Freytag*, 501 U.S. at 879 (concluding that the case before the court was "one of those rare cases" where the court should exercise its discretion to hear a challenge to the constitutional authority of the trial judge that was not raised below)). In *Freytag*, the court exercised its discretion to review an Appointments Clause challenge that had not been raised before the Tax Court because the issues raised "important questions" "about the Constitution's structural separation of powers." *See Id.* at 872. In that case, the court was tasked with deciding whether the authority that Congress has granted the Chief Judge of the United States Tax Court to appoint special trial judges violated separation of powers. *Id.* at 871. The Court explained that it faced a constitutional challenge that was "neither frivolous nor disingenuous" and which went directly "to the validity of the Tax Court proceedings," such that it was a "rare case[]" for which the court should exercise discretion to hear issues not raised below. *Id.* at 877-79. The present case is not such a "rare" or "exceptional" circumstance that warrants discretionary review of issues not raised below. "Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review. A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial." *Id.* at 893-94 (Scalia, J., concurring in part and concurring in judgment).

Having rejected Plaintiff's Appointments Clause challenge, the undersigned next addresses Plaintiff's substantive arguments.

---

there is a split in two of the districts—the Eastern District of North Carolina and Eastern District of Pennsylvania." (ECF No. 22 at 20, n.8, n.9) (collecting cases)

**B. The ALJ Properly Evaluated Dr. Shaikh's Medical Opinion**

Between December 2015 and May 2016, Plaintiff was treated at Pompano Adult Primary Care Center, now known as The Annie L. Weaver Health Center, located in Pompano Beach.[10] During this period, Plaintiff was seen three times: twice by Dr. Shawnette Saddler (in December 2015 and May 2016) (R. 343-52, 367-76, 503-12), and once by Dr. Bashir Shaikh (in January 2016) (R. 334-42). Relevant here, at the January 2016 visit, Dr. Shaikh examined Plaintiff and completed a Physical Assessment Form in which he opined that Plaintiff was severely limited. (R. 360-61). The ALJ gave "no weight" to Dr. Shaikh's Physical Assessment Form. (R. 19).

Plaintiff argues that the ALJ erred in assigning "no weight" to Dr. Shaikh's opinion because Dr. Shaikh was a "treating source" whose opinion was entitled to great or controlling weight. *See generally* (ECF No. 20 at 10-13). For the reasons discussed below, however, the undersigned finds that the ALJ applied the proper legal standards in evaluating Dr. Shaikh's opinion and that substantial evidence supports her Decision.

*1. Legal Standards Regarding Medical Opinion Evidence*

Under applicable Social Security regulations, an ALJ must consider and evaluate every medical opinion received in determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). In weighing medical opinions, an ALJ is

---

[10] *See* Annie L. Weaver Health Center, https://www.browardhealth.org/locations/annie-l-weaver-health-center (last visited Mar. 23, 2020) (confirming name change).

required to consider certain factors, including: (i) whether the claimant has an examining or treating relationship with the medical source; (ii) the medical source's area of specialization; (iii) whether the medical source's opinion is well-supported; and (iv) whether the opinion is consistent with the record. *See* 20 C.F.R. § 404.1527(c). Moreover, an ALJ must generally give controlling weight to the opinion of a treating source about the nature and severity of a claimant's impairments if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

When an ALJ does not give controlling weight to a treating source's opinion, the ALJ must clearly articulate "good cause" for discounting it. *Winschel*, 631 F.3d at 1179 (citing *Phillips*, 357 F.3d at 1240-41). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241). Ultimately, the ALJ can discount even the opinion of a treating physician, as long as the ALJ articulates her reasons, and failure to do so is reversible error. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citation omitted); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) ("The law is clear that . . . the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.") (quoting *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981)). Regardless of what weight is ultimately given, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor" so that a reviewing court may "determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel,* 631 F.3d at 1179 (citation omitted).

*2. Dr. Shaikh is not a Treating Source*

Plaintiff argues that, although Dr. Shaikh saw Plaintiff only once, Dr. Shaikh works at the "same clinic" as Plaintiff's other doctors, and that Dr. Shaikh and "each of those [other doctors at the clinic] should be [considered] treating sources." (ECF No. 20 at 12-13). Plaintiff explains that "while Dr. Shaikh only saw [Plaintiff] one time, he worked in the same clinic where [Plaintiff] had been seen for her chiropractic care, her orthopedic care, and [primary] care by Dr. Saddler, i.e., the Path Medical Center-Margate." (ECF No. 20 at 12). Thus, Plaintiff argues that "Dr. Shaikh had the benefit of Dr. Saddler's notes . . . [and] also had access to the other doctors at Path Medical Center, as noted above." (ECF No. 20 at 13). Plaintiff further argues that "the records available to [Dr. Shaikh] from doctors at [Path Medical Center] included orthopedist, Dr. Lorello's records," so that Dr. Shaikh had "considerable information available to him when he made his assessment of [Plaintiff's] work abilities on January 21, 2016, and not just the one time visit that the ALJ refers to." (ECF No. 20 at 12). Plaintiff's argument fails for several reasons.

First, Dr. Shaikh practices at Pompano Adult Primary Care Center, not Path Medical-Margate, where Plaintiff's chiropractors and orthopedic doctors worked. Even a cursory review of the record confirms that Path Medical Center-Margate and Pompano Adult Primary Care are distinct medical facilities, at different locations, and with different doctors. For example, while Pompano Adult Primary Care Center is in Pompano, Path Medical is a chiropractic and orthopedic center on State Road 7 in Margate. Plaintiff visited Path Medical on four occasions: December 22, 2014 (Dr. Jillian Duquette) (R. 322-25); January 24, 2015 (Dr. Kieron Parchment) (R. 331); March 10, 2015 (Dr. Robert Lorello) (R. 326-28); and March 25, 2015 (Dr. Parchment) (R. 329-30). Consequently, Plaintiff's argument that Dr. Shaikh had full access to all of Path

Medical Center's records is factually incorrect.[11]  Rather, as the ALJ correctly noted, Dr. Shaikh treated Plaintiff only once (on January 16, 2016) before completing the Physical Assessment Form. (R. 19).  One visit does not qualify Dr. Shaikh as a treating source.  *See* 20 C.F.R. § 404.1527(a)(2) (a treating source must have an ongoing treatment relationship with claimant); *Crawford*, 363 F.3d at 1160 (physician examining claimant once was not treating source) (citing *McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir.1987)); *Wimberley v. Berryhill*, No. 17-00558-B, 2019 WL 1418056, at *7 (S.D. Ala. Mar. 29, 2019).  Moreover, even considering Plaintiff's previous visit to Pompano Adult Primary Care Center in December 2015 (when she saw Dr. Saddler), this additional visit does not alter the undersigned's conclusion.

Second, the ALJ properly discounted Dr. Shaikh's opinion as inconsistent with his one-time same-day examination of Plaintiff.  (R. 19).  Plaintiff, who had visited Pompano Adult Primary Care Center only once before in December 2015, saw Dr. Shaikh in January 2016 for a"scheduled follow-up" and "general exam."  (R. 334).  At this visit, Plaintiff reported to Dr. Shaikh that her health "was good," her diet was "balanced," and that she sometimes exercised. (R. 334).  Notably, Dr. Shaikh found no abnormalities in Plaintiff's systems (including her respiratory, cardiovascular, genitourinary, endocrine, immunologic, musculoskeletal, integumentary, neurologic, and psychiatric systems).  (R. 334-35).  More specifically, Plaintiff's lungs were clear, and her heart rate and rhythm, musculoskeletal range of motion, gait, and extremity strength were all normal.  (R. 337).  Only her blood pressure was high, at 154/89. (R. 336, 340).  In addition, Dr. Shaikh's treatment notes indicated that Plaintiff's high blood pressure, MS, hyperlipidemia, and diabetes had "resolved."  (R. 335).

---

[11] The Commissioner similarly misstated Dr. Shaikh's affiliation with Path Medical Center.  *See* (ECF No. 22 at 3).

Despite these mostly normal findings, Dr. Shaikh completed a Physical Assessment Form, in which he opined that Plaintiff was severely limited. (R. 360-61). In the Physical Assessment Form, Dr. Shaikh noted Plaintiff's previous diagnoses of MS, diabetes mellitus, high blood pressure, and high lipids. (R. 360). Dr. Shaikh opined that Plaintiff's symptoms would frequently interfere with her attention and concentration to perform simple work-related tasks, and that her medications made her drowsy. (R. 360). He further opined that in an 8-hour day, Plaintiff could only: (i) sit for 4 hours; (ii) walk for 2 blocks without significant pain; (iii) stand/walk for 30 minutes; and (iv) never lift or carry even less than 10 pounds. (R. 360). Dr. Shaikh also opined that Plaintiff would need 30 minute-breaks every 3-4 hours, and could use her hands, fingers and arms only 50% of the time to grasp or twist objects, reach, and for fine manipulation. (R. 360). Lastly, Dr. Shaikh concluded that Plaintiff would be absent from work more than four times each month. (R. 361).

As the ALJ correctly noted, Dr. Shaikh's examination findings were inconsistent with "the severity of limitations that he opined" in the Physical Assessment Form. (R. 19). The ALJ noted:

> [Dr. Shaikh's] physical examination of [Plaintiff] . . . was grossly normal. [Plaintiff] did not appear to be in acute distress. Examination of her chest revealed regular rate and rhythm with good pulses, normal peripheral perfusion, and no edema. Examination of [Plaintiff's] musculoskeletal system showed that [Plaintiff] had normal range of motion and normal strength without tenderness, swelling, or deformity. Her gait was even normal. Neurological examination revelated that [Plaintiff] was alert and oriented with intact sensation, motor function, cranial nerves, and deep tendon reflexes. [Plaintiff's] A1C and lipids were even normal. Significantly, one of the only abnormalities noted at this appointment was elevated systolic blood pressure.

(R. 19-20).

Against this backdrop, the undersigned finds that the ALJ clearly articulated her reasons for discounting Dr. Shaikh's opinion and that substantial evidence supports her Decision.

### C.  The ALJ Satisfied Her Duty to Develop a Full and Fair Record

Next, Plaintiff argues that the ALJ erred in failing to "fully and fairly" develop the record by failing to obtain additional medical records from: (i) Broward Health; (ii) her alleged primary care provider Dr. Andy Weaver; (iii) Path Medical Center; (iv) hospital records confirming her May 2015 diagnoses of MS; and (v) an unidentified neurologist purportedly treating Plaintiff's MS.  (ECF No. 20 at 14-15).

Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record.  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  This obligation exists even when a claimant is represented by counsel and requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  *Id.*  (citations and quotations omitted); *Jones v. Astrue*, 863 F. Supp. 2d 1142, 1154 (S.D. Ala. 2012) ("[T]he ALJ must probe into all relevant facts, even where a claimant is represented by counsel.") (citing *Cowart*, 662 F.2d at 735).  Further, the ALJ must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cowart*, 662 F.2d at 735; *see also Fontanez v. Barnhart*, 195 F. Supp. 2d 1333, 1357 (M.D. Fla. 2002) (remanding the case where the ALJ failed to determine the significance of claimant's limited test scores).  Nonetheless, a claimant must show prejudice before a court can find that her due process rights have been violated to such a degree that the case must be remanded to the Commissioner for further development of the record.  *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (citations omitted).

Ultimately, a claimant bears the burden of proving that she is disabled and is responsible for producing evidence in support of her claim.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see also* 20 C.F.R. § 416.912(a)(1) (a claimant must furnish medical and other evidence

that the Commissioner can use to reach conclusions about her medical impairment(s)); 20 C.F.R. § 416.912(a)(2) (a claimant must provide medical evidence showing that she has an impairment(s) and how severe they are). In evaluating whether a case should be remanded for an ALJ's purported failure to fully develop the record, courts consider whether there are evidentiary gaps in the record that result in unfairness or "clear prejudice" to the claimant. *Brown*, 44 F.3d at 935; *see also Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). Such prejudice is absent here.

### 1. The ALJ Did not Err in Failing to Subpoena Records from Broward Health

Plaintiff argues that the ALJ's failure to subpoena additional medical records from Broward Health was error. (ECF No. 20 at 13-14). On December 20, 2017, Plaintiff's counsel sent a letter requesting that the ALJ subpoena medical records from Broward Health from January to December 2015, and from January 2016 to December 2017. (R. 280-81). In the letter, Plaintiff acknowledged that she did not know what these records contained, but "believ[ed] that these records [were] necessary for a complete disability determination." (R. 280). Notably, the letter did not request that the ALJ obtain records from any other provider.

At the January 2018 administrative hearing, the ALJ and counsel discussed Plaintiff's request to subpoena records from Broward Health. (R. 83-84, 86). Counsel explained that these records related to "two or three nights [at the hospital] for breathing trouble." (R. 83, 86). Counsel added that Plaintiff's primary care doctor was Andy Weaver, but made no request for his records. (R. 83). Rather, as in the letter, Plaintiff requested that the ALJ subpoena additional records only from Broward Health. (R. 84).

The undersigned is unpersuaded by Plaintiff's argument that the ALJ erred in not subpoenaing additional records from Broward Health. First, a remand is appropriate only when the ALJ's failure to develop the record results in prejudice to the Plaintiff. *Graham*, 129 F.3d at

1423 (remand for failure to develop record requires showing of prejudice); *Mitchell v. Astrue*, No. 1:09-CV-02026-AJB, 2010 WL 3749201, at *9-10 (N.D. Ga. Sept. 20, 2010) (claimant must show prejudice in ALJ's failure to subpoena medical records) (citing *Robinson v. Astrue,* No. 09-12472, 2010 WL 582617, *2 (11th Cir. Feb.19, 2010); *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1298 (N.D. Ga. 2008) (same). Here, Plaintiff concededly did "not know what medical conclusions were reached in these records." (R. 280). Thus, Plaintiff does not argue, nor can she show, that anything in those records would have affected the ALJ's decision. Rather, the requested subpoena was a vague and general request for two years' worth of records, which may not even have existed. Indeed, on September 27, 2017, Broward Health had advised Plaintiff's counsel that it had "no dates of service for dates requested." (R. 281).

Second, even assuming that Plaintiff may have been hospitalized for a few days due to breathing problems, such evidence would simply be cumulative of other instances in the record where Plaintiff reported difficulty breathing. *See* (R. 326) (reporting shortness of breath to Dr. Lorello in March 2015); (R. 298) (reporting shortness of breath during a hospital stay in June 2015); (R. 461, 468) (reporting chest pain and shortness of breath during hospital stay in January 2017). Moreover, Plaintiff has not explained how the purportedly missing evidence affected the ALJ's disability determination or her ability to make an informed decision. *See Rivera v. Comm'r of Soc. Sec. Admin.*, No. 6:12-CV-232-ORL-GJK, 2013 WL 557214, at *7 (M.D. Fla. Feb. 14, 2013) (to establish prejudice, the claimant must explain how the missing medical evidence prevented the ALJ from making an informed decision or affected the ALJ's overall disability determination). Although Plaintiff speculates that the absence of Broward Health's records "raise questions about whether the ALJ fulfilled her duty to fully and fairly develop the record,"

Plaintiff's claims are mere speculation, and "speculation about the contents of those records does not justify a remand." *Echevarria v. Colvin*, No. 8:12-CV-1801-T-TGW, 2013 WL 4518212, at *5 (M.D. Fla. Aug. 23, 2013).

Lastly, the ALJ's basic obligation to develop a full and fair record requires only that she develop a medical record for the 12 months *preceding* the filing of the claimant's application for benefits. 20 C.F.R. §§ 404.1512(d), 416.912(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application. . . ."). Here, Plaintiff filed for benefits on January 12, 2016, so the ALJ's duty to develop the record goes back to January 2015. Thus, the ALJ had no duty to obtain records from January 2016 to December 2017, more than a year after Plaintiff applied for benefits. *See Ellison*, 355 F.3d at 1276 (ALJ not bound to develop medical record for the two years after claimant applied for benefits); *Smith v. Comm'r of Soc. Sec. Admin.*, 501 F. App'x 875, 878-79 (11th Cir. 2012) (ALJ was only obligated to develop medical record for the twelve months preceding the filing of claimant's application for benefits).

### 2. *Plaintiff's Arguments Regarding Other Missing Medical Records Lack Merit*

Plaintiff summarily argues that the ALJ erred by not obtaining additional unspecified records from Plaintiff's primary care provider "Andy Weaver," Path Medical Center, and an unidentified neurologist that Plaintiff claims to have visited. (ECF No. 20 at 14-15). Plaintiff also suggests that the ALJ should have obtained additional hospital records confirming her May 2015 MS diagnosis. *Id.* at 14.

Arguments made in such a perfunctory manner are generally deemed waived. *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (citation omitted). Moreover, Plaintiff's argument also fails on the merits. For example, nothing in the record,

including Plaintiff's testimony at the hearing, indicates that Plaintiff's primary care provider was a doctor named Andy Weaver. Rather, the record reflects that Plaintiff saw various doctors at Pompano Adult Primary Care Center and that Pompano Adult Primary Care later changed its name to The Annie L. Weaver Health Center. *See supra* note 9. The record contains treatment notes from this clinic both before and after the name change. *See* (R. 334-42, 343-52, 367-76, 503-12). Thus, Plaintiff's argument regarding purportedly missing records from an "Andy Weaver," without further explanation, is speculative.

Next, Plaintiff claims that the ALJ should have obtained additional records from Path Medical Center regarding Plaintiff's complaints of headaches, vision loss, and memory problems, the initial May 2015 hospital records of her MS diagnosis, and records from an unidentified neurologist that Plaintiff told Dr. Saddler she saw once. (ECF No. 20 at 14); *see also* (R. 503) (Plaintiff reported seeing a neurologist who prescribed medication); (R. 518) (Plaintiff reported to nurse that she was prescribed betaseron injections for her MS). These arguments, in addition to being cursory, are also without merit. First, it is Plaintiff's responsibility, not the ALJ's, to produce evidence to support her claim. *See Ellison*, 355 F.3d at 1276. Second, the evidence to which Plaintiff refers, if it exists, would be cumulative of evidence already in the record and considered by the ALJ, such as the results of Plaintiff's January 2015 MRI and her diagnosis of MS, neither of which are contested. *See* (R. 17-18, 293-94). Lastly and importantly, Plaintiff fails to show that she was prejudiced by the absence of these records or explain how these might have affected the ALJ's decision. *See Rivera*, 2013 WL 557214, at *7.

### D. The ALJ Properly Determined that Claimant Did Not Meet or Equal a Listing

At Step 3 of the sequential evaluation, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals any one of the Listings. (R. 14).

In making this determination, the ALJ specifically discussed Listing 4.02 (chronic heart failure), Listing 11.09 (MS), and several Listings related to diabetes, including Listing 1.00 (gangrene and/or amputation of an extremity), Listing 2.00 (diabetic neuropathy), Listing 4.00 (coronary artery disease), and Listing 11.00 (peripheral and sensorial neuropathies).  As well, the ALJ discussed Plaintiff's obesity.  (R. 15).  Nonetheless, Plaintiff alleges error in that the "[ALJ] does not state that she ever considered the listing found at 4.04 for ischemic heart disease." (ECF No. 20 at 15).  Plaintiff's argument is without merit.

First, an ALJ is not required to discuss a particular Listing by name.  *See Prince v. Comm'r of Soc. Sec. Admin.*, 551 F. App'x 967, 971 (11th Cir. 2014) (ALJ's finding regarding Listing may be implicit); *Hutchison v. Bowen,* 787 F.2d 1461, 1463 (11th Cir. 1986) (ALJ's implicit finding that claimant did not meet a Listing was clear where ALJ considered relevant law and evidence ALJ).  Second, an ALJ does not have to "mechanically recite the evidence leading to her determination."  *Hutchison,* 787 F.2d at 1463.  Third, it is Plaintiff who bears the burden of demonstrating that her impairment meets or equals a listed impairment.  *Barron v. Sullivan,* 924 F.2d 227, 229 (11th Cir. 1991).  Moreover, to meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement.  20 C.F.R. § 416.925(c)(3); *Wilson v. Barnhart,* 284 F.3d 1219, 1224 (11th Cir. 2002).  Plaintiff has not done so here.  An impairment that meets only some of the Listing requirements, no matter how severe, does not qualify.  *Prince*, 551 F. App'x at 969; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

In relevant part, Listing 4.04 provides:

> ***Ischemic heart disease***, with symptoms due to myocardial ischemia, as described in 4.00E3-4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment), with one of the following:

C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:

1. Angiographic evidence showing:

a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or
b. 70 percent or more narrowing of another nonbypassed coronary artery; or
c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or
d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or
e. 70 percent or more narrowing of a bypass graft vessel; and

2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R. Pt 404, Subpt. P, Appendix 1 § 4.04.

Plaintiff has failed to establish that she met or equaled the specific requirements of Listing 4.04. For example, Plaintiff failed to show that her impairments satisfied the introductory paragraph of Listing 4.04, which required symptoms due to myocardial ischemia "while on a regimen of prescribed treatment." As the ALJ found, however, Plaintiff's "myocardial infarction stabilized quickly upon admission to the hospital." (R. 18); *see* (R. 462) (noting Plaintiff's NSTEMI (heart attack) was "stable, with no pain currently"). Indeed, after a successful catherization and stent placement, Plaintiff was discharged from the hospital as stable. (R. 438, 440, 442). In addition, Plaintiff failed to provide evidence of an angiography or a timely exercise tolerance test or a statement from a medical source explaining that such an exercise test could not be done without posing a risk to Plaintiff. Furthermore, Plaintiff did not produce angiographic evidence showing the degree of arterial narrowing required in 4.04C(1). Lastly, the ALJ's

Decision reflects that the ALJ fully considered the existing evidence regarding Plaintiff's heart condition in determining whether Plaintiff met any of the Listings. *See, e.g.*, (R. 14-15, 16-17) (ALJ's fulsome discussion of Plaintiff's cardiac history). Plaintiff's diagnosis of a heart attack, without more, does not meet the requirements of Listing 4.04.

### E. The ALJ Properly Evaluated Plaintiff's Testimony

Plaintiff argues that the ALJ erred in discounting Plaintiff's statements about the intensity and limiting effects of her symptoms as "not entirely consistent with the medical evidence and other evidence in the record." (R. 16); (ECF No. 20 at 16-17).

In considering a claimant's symptoms, the ALJ must follow a two-step process: "Step one is to determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms." *Contreras-Zambrano v. Soc. Sec. Admin., Comm'r,* 724 F. App'x 700, 703 (11th Cir. 2018) (citing SSR 16-3p, 82 Fed. Reg. 49462-03, 49463-65 (Oct. 25, 2017)). "Step two is to evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit her ability to perform work-related activities." *Id.* (citing SSR 16-3p, 82 Fed. Reg. at 49464-66). An ALJ considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence, including [claimant's] history, the signs and laboratory findings, and statements by [the claimant's] medical sources or other persons about how [her] symptoms affect [her]." 20 C.F.R. § 416.929(c)(4).

Here, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with

the medical evidence and other evidence in the record." (R. 16). The ALJ articulated more than

a dozen reasons why she discounted Plaintiff's statements. The ALJ stated:

[1] . . . Notably the claimant's primary care physician noted that the claimant's hypertension, multiple sclerosis, hyperlipidemia, and diabetes mellitus were all resolved, suggesting symptom control with medications.

[2] Additionally, examinations of her heart have shown regular rate and rhythm. Examination of the claimant generally revealed no edema. The claimant's myocardial infarction stabilized quickly upon admission to the hospital.

[3] The claimant's hypertension was diagnosed as benign essential hypertension.

[4] The claimant's lipids have been within normal limits at times.

[5] The claimant's A1C levels and glucose have also been grossly normal on occasion. Her diabetes was even noted to be stable during her hospitalization in early 2017; indeed, the claimant even testified that her diabetes mellitus is stable with medication.

[6] Although a month prior to the alleged onset date, range of motion testing at the claimant's June 2015 consultative examination was grossly normal with some limitation to the inversion and eversion of her right ankle; musculoskeletal examinations since the claimant's alleged onset date have shown grossly normal range of motion and strength without tenderness, swelling or deformity. She has had normal examination of her back with full range of motion. While the claimant alleged that she has difficulty walking and needs to use a cane, physical examinations of the claimant have generally indicated that she had normal gait and steady ambulation. The claimant had full range of motion and sensation in her left leg.

[7] Despite her allegations of blurred vision, the claimant had grossly normal eye examinations.

[8] Her speech has also been normal.

[9] The claimant has had normal neurological examinations with intact sensation, motor function, and deep tendon reflexes.

[10] The claimant has also been alert and oriented with normal mental status examinations. There are no noted or observed impairments to concentration or memory in the record.

(R. 18-19) (numbers added and internal record citations omitted).

In addition to the mostly normal examination findings quoted above, the ALJ noted "other inconsistencies" between claimant's allegations and the record. (R. 19). The ALJ added:

> [W]hile the claimant alleges that she has been disabled since July 2, 2015, she described her overall health status as good in late 2015 and early 2016. The claimant was counseled on taking her medication as prescribed; it was also noted that the claimant's lack of insurance caused her to see a doctor infrequently and intermittently use medications for management of her hypertension and diabetes mellitus. However, the claimant was also counseled on healthy eating, daily activity, and exercise for management of her diabetes mellitus. She reported that she sometimes exercises, which is inconsistent with the degree of debility the claimant alleged.

(R. 19) (internal record citations omitted).

In the Motion, Plaintiff challenges only the first of the many reasons the ALJ articulated for discounting Plaintiff's statements, i.e., that Plaintiff's impairments were all "resolved, suggesting symptom control with medication." (ECF No. 20 at 16-17). Plaintiff argues that the "ALJ's use of this as an inconsistency to reject [Plaintiff's] severity of symptoms must fail." *Id.* at 17. Unfortunately for Plaintiff, that leaves more than ten other valid reasons for why the ALJ discounted Plaintiff's statements.

Against this backdrop, the undersigned finds that the ALJ properly evaluated Plaintiff's credibility. *See, e.g.*, *Vason v. Astrue*, No. 2:09-CV-912-TFM, 2010 WL 2629444, at *5 (M.D. Ala. June 30, 2010) (concluding that ALJ did not err in discounting claimant's testimony where conflicts existed within her testimony and between her testimony and the record). In addition, credibility determinations are the province of the ALJ, and a clearly articulated credibility finding with substantial supporting record evidence will not be disturbed. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *May v. Comm'r of Soc. Sec. Admin.*, 226 F. App'x 955, 958 (11th Cir. 2007) (noting that the ALJ provided sufficiently explicit and adequate to reasons to partially discredit claimant);

*see also, Pettaway v. Astrue*, 376 F. App'x 889, 891 (11th Cir. 2010) (finding no reversible error where ALJ provided specific reasons for discrediting claimant's testimony); *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir 2005) (finding reversible error where court disturbed an ALJ's adequately explained determination regarding claimant's subjective complaints).

## VI. <u>CONCLUSION</u>

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.     Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**, Defendant's Motion for Summary Judgment (ECF No. 22) is **GRANTED**, and the ALJ's Decision is **AFFIRMED**.

2.     The Clerk is directed to enter judgment in favor of Defendant, to terminate all pending motions, and to **CLOSE** the case.

**DONE AND ORDERED** at Chambers in Fort Lauderdale, Florida on March 24, 2020.


_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record